IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Holliday Fenoglio Fowler, L.P., | No. CV-15-01180-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| L'Auberge Newco, LLC, | |
| Defendant. | |

Before the Court are the parties' Cross Motions for Summary Judgment. (Docs. 50, 53.) For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 50) is granted.

**I.  Factual Background**[1]

Plaintiff Holliday Fenoglio Fowler, L.P. ("HFF") is a financial services provider for the commercial real estate industry (Doc. 54, ¶ 1), and Defendant L'Auberge Newco, LLC ("LAN") owns and operates the L'Auberge de Sedona Resort and Spa ("L'Auberge Resort"), a luxury hotel in Sedona, Arizona. (Doc. 51, ¶ 1.) Defendant LAN's affiliate—non-party Orchards Newco, LLC ("ON")—owns and operates the Orchards Inn, which is adjacent to the L'Auberge Resort. (Doc. 51, ¶ 3.) IMH Financial Corporation ("IMH") is the sole member and manager of both Defendant LAN and non-party ON. (Doc. 51, ¶ 4.) Although the exact circumstances under which Plaintiff became aware of Defendant's

---

[1]  The following facts are taken from the parties' statements of facts and are not disputed unless noted.

need to refinance a loan on the L'Auberge Resort are disputed, the parties entered into a contract on August 22, 2014 (henceforth, "the agreement"). (Doc. 51, ¶ 11; Doc. 54, ¶ 17.) Under the terms of the agreement, Plaintiff would serve as Defendant's "exclusive representative for the purpose of arranging financing" during the exclusivity period beginning August 22, 2014 and ending on October 30, 2014. (Doc. 51-6, ¶ 1.) Absent written notice to the contrary from either party, Plaintiff would continue to serve as Defendant's exclusive representative after October 30, 2014 on a month-to-month basis. (Doc. 51-6, ¶ 1.) As its exclusive financial intermediary, Defendant would refer all finance sources interested in refinancing Defendant's loan to Plaintiff. (Doc. 51-6, ¶ 1.) With regard to compensation for Plaintiff, the agreement reads, in part:

> [Defendant] shall pay the Fee (as defined below) to [Plaintiff] only in the event a financing of the Property . . . closes (a) at any time during the Exclusivity Period, (b) at any time following the Exclusivity Period in the event such financing closes pursuant to any letter of intent, term sheet, application or commitment issued during the Exclusivity Period or (c) at any time during the Tail Period [defined as the six months following the expiration of the Exclusivity Period].

(Doc. 51-6, ¶ 2.) The agreement defined the fee as "0.75% of the final aggregate negotiated loan amount." (Doc. 51-6, ¶ 2.)

During the exclusivity period, Plaintiff referred nearly fifty potential financing sources to Defendant. (Doc. 51, ¶ 19; Doc. 54, ¶ 30.) The record reflects that Defendant did not execute an agreement with any of the financing sources referred by Plaintiff during the initial exclusivity period. (Doc. 51, ¶ 28; Doc. 61, ¶ 28.) In mid-October, Plaintiff became aware from potential financing sources that another entity—Cushman & Wakefield ("Cushman")—was also attempting to secure financing for IMH assets, including the L'Auberge Resort loan. (Doc. 54, ¶ 34; Doc. 59, ¶ 34.) When contacted by Plaintiff regarding Cushman, Defendant explained that Cushman was working to secure financing for other IMH assets, but were specifically told not to include the L'Auberge

Resort loan. (Doc. 59, ¶ 34.)

On November 25, 2014, Defendant sent Plaintiff an e-mail that read, in its entirety, as follows: "Looks like we area [sic] hitting all dead ends [sic] I would say." (Doc. 51, ¶ 31; Doc. 61, ¶ 31.) Later that afternoon, Defendant informed Plaintiff that it had received favorable terms from a financing source, but did not disclose the name of the financing source to Plaintiff at that time. (Doc. 51, ¶ 8; Doc. 54, ¶ 41.) Three days later, Defendant received a term sheet from Karlin Real Estate, LLC ("Karlin") in response to Defendant's inquiry to serve as a financing source for IMH's assets, including the L'Auberge Resort loan. (Doc. 51, ¶ 36.) While the record is unclear as to whether Defendant ultimately executed the refinancing of the loan with Karlin or one of its subsidiaries, and what IMH assets were used to secure the loan, both Plaintiff and Defendant agree that Defendant executed a $50,000,000 loan—which included the L'Auberge Resort loan— in early spring 2015. (Doc. 51, ¶ 41; Doc. 54, ¶ 47.)

On March 5, 2015, Plaintiff sent Defendant an invoice for $375,000—the fee to which Plaintiff believed itself to be entitled to under the exclusivity agreement with Defendant. (Doc. 51, ¶ 47; Doc. 54, ¶ 50.) Plaintiff did not receive payment from Defendant. (Doc. 54, ¶ 51.) Plaintiff filed the present suit against Defendant for breach of contract, breach of good faith, and alternatively, unjust enrichment. (Doc. 1.) Defendant and Plaintiff have filed Cross Motions for Summary Judgment. (Docs. 50, 53.)

## II. Standard of Review

A court shall grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do such, the burden then shifts to the non-movant who, "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). At this stage, the function of the judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III. Discussion**

    **A. Breach of contract claim**

In determining whether Defendant breached its agreement with Plaintiff, Arizona law governs.[2] *Geico Gen. Ins. Co. v. Tucker*, 71 F.Supp.3d 985, 987 (D. Ariz. 2014) ("Where a federal court has jurisdiction by virtue of diversity of citizenship of the parties, the court must follow state law."). Under Arizona law, a breach of contract claim requires a plaintiff to demonstrate "(1) the existence of a contract, (2) the breach of the contract, and (3) resulting damages." *Cavan v. Maron*, 182 F.Supp.3d 954, 960 (D. Ariz. 2016) (citing *Chartone, Inc. v. Bernini*, 207 Ariz. 162, ¶ 30, 83 P.3d 1103, 1111 (App. 2004)). Damages must be "reasonably certain," the certainty of which "is provided where the plaintiff devises some reasonable method of computing his net loss." *Hubbard v. Shelton*, No. CV-08-623-TUC-DCB, 2011 WL 13183092, at *8 (D. Ariz. 2011) (internal citations omitted). Moreover, it is well settled that "conjecture or speculation cannot provide the basis for an award of damages." *Id.*

---

[2] Neither party disputes that Arizona law is controlling. (Doc. 50 at 3; Doc. 53 at 4.)

As a preliminary matter, it is first necessary for the Court to address the scope of the agreement for purposes of the present Cross Motions for Summary Judgment. Plaintiff argues on summary judgment—for the first time—that the conduct of both parties is evidence that Plaintiff was to serve as the exclusive representative for the entire "Sedona Portfolio," which included both the L'Auberge Resort loan and non-party ON's assets, including the Orchards Inn through either a (1) a separate implied contract or (2) the incorporation of implied terms to the agreement. (Doc. 53 at 10-12.) The Court will not entertain this argument because new issues may not be raised for the first time at the summary judgment stage. *Russell v. Pac. Motor Trucking Co.*, 672 F. App'x. 629, 631 (9th Cir. 2016); *WildEarth Guardians v. Jewel*, 134 F.Supp.3d 1182, 1194 n.65 (9th Cir. 2015). Thus, the Court will only look to the agreement between the parties as it was memorialized in writing on August 22, 2014.

To prevail, Plaintiff must prove the existence of a contract, breach, and resulting damages. Because Plaintiff has not met its burden of setting forth facts that demonstrate to reasonable certainty that it would be entitled to damages, Plaintiff's breach of contract claim fails as a matter of law. Assuming for the purposes of the present Cross Motions for Summary Judgment that Defendant breached its agreement with Plaintiff, Plaintiff has set forth no facts that would allow a reasonable juror to find that Plaintiff experienced any damages as a result of the breach. As of November 25, 2014—the date on which Defendant informed Plaintiff of Karlin's proposed loan terms—Plaintiff had yet to provide Defendant with a single lender that Defendant deemed acceptable and Plaintiff was still negotiating terms with at least five potential financial sources. Moreover, Plaintiff has failed to set forth any evidence that explains how the $375,000 fee calculated by Plaintiff takes into consideration the fact that Defendant's ultimate loan with Karlin included several IMH assets, not just the L'Auberge Resort loan. By failing to present any evidence demonstrating that it suffered damages—an essential element of the cause of action—Plaintiff's claim fails as a matter of law.

### B. Breach of implied covenant of good faith and fair dealing claim

In Arizona, all contracts contain "an implied covenant of good faith and fair dealing in every contract." *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, ¶ 30, 388 P.3d 834, 842 (App. 2017) (internal citation omitted). This implied covenant is violated when a party "acts in a manner that denies the other party 'the reasonably expected benefits' of the contract.'" *Id.* (citing *FL Receivables Tr. 2002-A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, ¶ 41, 281 P.3d 1028, 1037 (App. 2012)). Damages for breach of covenant of good faith and fair dealing are measured as ordinary contract damages. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, ¶ 21, 128 P.3d 756, 762 (App. 2006) (internal citation omitted). A party's failure to set forth evidence that would allow it to prevail on a breach of contract claim precludes recovery on a claim for breach of an implied covenant of good faith and fair dealing. *See id.* Because Plaintiff has failed to set forth facts to support its breach of contract claim, Plaintiff's claim for breach of implied covenant of good faith and fair dealing claim also fails as a matter of law.

### C. Unjust enrichment claim

Under Arizona law, a claim for unjust enrichment requires a plaintiff to show an "enrichment connected with an impoverishment and the absence of both justification and a legal remedy." *Johnson v. KB Home*, 720 F.Supp.2d 1109, 1122 (D. Ariz. 2010) (citing *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, ¶ 34, 48 P.3d 485, 492 (App. 2002)). Unjust enrichment claims may not be brought where "a specific contract governs the parties' relationship." *Id.* Because neither party disputes the validity of the agreement, Plaintiff's claim for unjust enrichment fails as a matter of law.

## IV. Conclusion

By failing to set forth facts that demonstrate damages, Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing fail as a matter of law. Plaintiff's claim for unjust enrichment also fails as matter of law because the conduct of the parties is governed by the August 22, 2014 agreement. Accordingly,

**IT IS ORDERED:**

1. That Defendant's Motion for Summary Judgment (Doc. 50) is **granted**;
2. That Plaintiff's Motion for Summary Judgment (Doc. 53) is **denied**; and
3. That the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 20th day of November, 2017.

							Honorable Steven P. Logan
							United States District Judge